UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| AFFINITY MUTUAL INSURANCE, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:16-CV-279 JD ) |
| THACKER AIR CONDITIONING REFRIGERATION HEARTING, INC., | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This is a negligence action arising out of a roof collapse. As part of a variety of upgrades to the Dutch Village Market building in Nappanee, Indiana, defendant Thacker Heating and Air was contracted to install new furnaces. In consultation with the general contractor, Thacker installed the six furnaces overhead on the wooden trusses that supported the building's roof. A couple of weeks later, a heavy snowstorm dropped over a foot of heavy, wet snow, and the roof collapsed. Plaintiff Affinity Mutual Insurance, which paid the insurance claim for the loss, filed this action, asserting that Thacker was negligent in installing units too heavy for the trusses to bear, causing the collapse. Thacker now moves for summary judgment, arguing primarily that the roof had pre-existing structural deficiencies that it could not have foreseen, so it should not be held liable. For the following reasons, the Court denies the motion for summary judgment.

**I. FACTUAL BACKGROUND**

Dutch Village Market was an auction barn and event center in Nappanee, Indiana. The central, open area of the building was about 200 feet long and 60 feet wide, with a ceiling that was supported by wooden trusses spanning the width of the building. Various additions to the building had also been made over time. In particular, an addition had been built along the

southern edge of the building. A new outer wall was built beyond the existing wall, and a new roof was built extending from the new wall to about ten feet from the top of the existing roof. The area between the old and new roofs was filled with blown-in insulation, so the structural support for the new overbuilt roof was not visible. As it turns out, however, the overbuilt roof was built such that its weight rested on top of the existing roof at the point where they met, about ten feet from the top of that roof. That manner of construction added a substantial amount of additional weight on the trusses supporting the main roof, which created "significant structural loading capacity deficiencies within th[e] preexisting roof framing system." [DE 70-1 p. 6].

In 2014, the owners of Dutch Village Market began a series of renovations to the building, which included upgrading its lighting, insulation, and heating, among other work. The general contractor for the project was Freeman Bontrager, who was also the president of the entity responsible for operations at Dutch Village Market. Thacker Heating and Air was brought in as a subcontractor to work on the heating system. Jon Thacker, its owner, proposed installing six gas furnaces, spaced about 35 feet apart along the length of the building. Mr. Bontrager and Mr. Thacker discussed where to place the units, and decided to install them overhead on the bottom chord of the trusses that supported the roof. Mr. Bontrager and his employees built wooden platforms on the trusses on which to place the furnaces.

Mr. Thacker then installed the furnaces on top of the platforms. He also ran gas lines to the units, and installed ductwork and drip pans and other associated equipment. Mr. Thacker estimated that the total weight of each assembly was about 280 pounds, though Affinity Mutual's expert estimated the weight to be 450 pounds. Prior to installing the units, Mr. Thacker and one of his employees stood on the platforms and judged them to be stable, so they had no concern that the platforms or the trusses would be unable to bear the weight of the furnaces. Mr.

Bontrager did not express any concern either, and none of them were aware of the fact that the existing truss system was also bearing the weight of the roof overbuild. However, they did not consult with a structural engineer or otherwise attempt to determine the capacity of the trusses.

In early February 2015, a heavy snowstorm resulted in about 14 to 15 inches of heavy, wet snow falling in the area. That snow accumulated on the roof of the Dutch Village Market building, which significantly increased the load on the trusses. When someone began hearing cracking noises in the roof, Mr. Bontrager and several of his employees got on the roof to attempt to shovel the snow off. Shortly thereafter, a truss broke and a large portion of the roof collapsed.

A structural engineer retained by Affinity Mutual opined that the cause of the collapse was the installation of the furnaces in the trusses. He concluded that, although the existing structure had significant deficiencies, it would not have collapsed absent the additional weight of the furnaces.[1] He also opined that the contractor should have assessed the capacity of the trusses before the installation and should have built additional structural support for the units in order to support their weight. Thus, after paying the insurance coverage for the damage to the building, Affinity Mutual filed this action against Thacker to recover those amounts.[2] Discovery has now

---

[1] Thacker disagrees, arguing that the collapse was caused by the roof's structural deficiency, the weight of the snow, and the new insulation on the inside of the roof, among other factors.

[2] It is unclear from the record whether Affinity Mutual paid the entirety of the loss or whether the building owner sustained any additional losses that were not covered (such as a deductible). The distinction between total and partial subrogation can be relevant to the existence of diversity jurisdiction, as partial subrogation creates a possibility that the citizenship of the subrogor would need to be considered as well, even if they are not named as a party. *See Pepsico do Brasil, Ltda v. Oxy-Dry Corp.*, 534 F. Supp. 2d 846 (N.D. Ill. 2008). That is not an impediment here, though, as Affinity Mutual can pursue any amounts that it paid, without the insured (whose citizenship might destroy complete diversity) becoming an indispensable party. *See Krueger v. Cartwright*, 996 F.2d 928, 933–34 (7th Cir. 1993); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 11 C 8946, 2012 WL 1287698, at *1–2 (N.D. Ill. Apr. 16, 2012).

closed, and Thacker moved for summary judgment. Thacker later filed a motion to correct one of its exhibits; that motion is granted as unopposed.

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## III. DISCUSSION

Affinity Mutual asserts claims against Thacker for negligence and breach of warranty. Thacker moved for summary judgment on both claims. The Court begins with the negligence claim. Under Indiana law, to prevail on a claim of negligence, the plaintiff must prove: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the defendant's breach. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). "Whether a duty exists is a question of law for the court to decide," while breach and causation are questions of fact. *Id.* at 386–87.

4

"In general, a contractor has a duty to use reasonable care both in his or her work and in the course of performance of the work." *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004); *Briesacher v. Specialized Restoration & Const., Inc.*, 888 N.E.2d 188, 192 (Ind. Ct. App. 2008). In arguing that it had no duty, Thacker contends that it could not have foreseen that the roof was already structurally deficient, as the area of the roof overbuild was concealed from view, so Thacker had no duty to account for that deficiency. However, in the context of determining whether a duty exists, a court's task "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Goodwin*, 62 N.E.3d at 391. Thus, the "foreseeability analysis focuses on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence." *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1121 (Ind. Ct. App. 2017).

Here, the class of plaintiffs are the owners of buildings at which the construction work is being performed, and the harm suffered—a roof collapse—is the kind of harm that can normally be expected from placing more weight on a truss than it is capable of holding. A contractor installing units in overhead areas could reasonably foresee that damage or injuries could occur if the units were not adequately supported. Thus, a contractor who installs units in overhead areas has a duty to reasonably assure that the supporting structures are capable of bearing the units' weight.

The cases that Thacker cites are not to the contrary and are factually distinguishable. For example, in *Polet*, the court held that a firm hired to provide security at a concert did not have a

duty to protect against the possibility that the stage would collapse. *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 983 (Ind. Ct. App. 2016). And in *Neal*, the court held that a bank whose employees volunteered to help a driver change a tire did not have a duty to protect the public from the possibility that the driver would be impaired. *Neal*, 68 N.E.3d at 1121–22. In both of those cases, the injuries were not "of a kind normally to be expected" in the course of the defendants' businesses. Here, the defendant's business involved installing furnaces, and the resulting harm was well within what would normally be expected from installing in a ceiling a unit that was too heavy. If, for example, the furnaces weighed five tons, or the trusses were visibly compromised, a contractor could not seriously suggest that it has no duty to reasonably inquire into whether the trusses could hold the weight. That the units here actually weighed only a couple hundred pounds, or that the structural deficiency was not visibly apparent, only means that it is less likely that Thacker breached the duty, not that no duty exists.

Having determined that Thacker did owe a duty of reasonable care, the Court must determine whether a jury could find that Thacker breached that duty and that the breach proximately caused the roof collapse. Because those issues depend on findings of reasonableness and foreseeability, "[b]reach and proximate cause are almost always questions of fact to be resolved by a factfinder." *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 86 (Ind. Ct. App. 2018); *Briesacher*, 888 N.E.2d at 192 ("In negligence cases, summary judgment is rarely appropriate. This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence."). The Court finds that to be the case here.

In moving for summary judgment on these issues, Thacker again focuses on the foreseeability of the pre-existing structural deficiency in the roof. It notes that the roof

overbuild's structure was concealed from view, and that not even the general contractor knew that the roof was built in such a way as to place its weight (as well as the weight of any snow that accumulated on top of the roof) on the trusses for the main roof, instead of on a load-bearing wall. Thacker thus argues that it could not have known that the trusses would have to bear all of that additional weight, so it was not negligent in failing to address that deficiency and the resulting collapse was not a foreseeable result of the installation of the furnaces.[3]

It is plain that the roof's structural deficiency and the ensuing collapse were not foreseen, but that it not to say they were not foreseeable. As a specialist in the heating, ventilation, and air conditioning field, Thacker had no expertise in evaluating the structural integrity of the roof, so the question is not whether it could have determined the trusses' capacity on its own. Rather, the question is whether a jury could find that Thacker should have consulted with a structural engineer, or directed the general contractor to do so, before proceeding to install the units in the trusses. Thacker was installing six multiple-hundred pound units in the trusses of this building. Yet all it did to test the capacity of the trusses was to have two people stand on the platforms to see if they budged. Perhaps a jury would find that Thacker reasonably relied on its experience installing furnaces in attics, as well as the lack of any warning from the general contractor and the lack of any visible defects, to conclude that the trusses could bear the weight of the units. But a jury could also find that given the weight of the units, the fact that they were being installed overhead in a building open to the public, and in an area susceptible to heavy snowfall, the prudent course would have been to first consult with a structural engineer. In fact, Mr. Bontrager

---

[3] Thacker also suggests in its opening brief that the heavy snowfall was unforeseeable, but heavy snow in northern Indiana is commonplace, and the amount of snow involved in this storm, while heavy, was far from unforeseeable.

testified that his company had used structural engineers "many times" when working with trusses, but no engineers were consulted in connection with this project. [DE 69-1 p. 81].

Indiana courts have held under similar circumstances that disputes of fact precluded summary judgment. For example, in *Pearson Construction*, a pressurized water pipe burst because a valve had been installed that was not meant for use on a pressurized line. *St. Paul Fire & Marine Ins. Co. v. Pearson Const. Co.*, 547 N.E.2d 853, 855 (Ind. Ct. App. 1989). Neither the engineer whose plans called for that specific valve nor the subcontractor who installed the valve knew that the line was pressurized. *Id.* In fact, the plans that were available to the general contractor did not reflect that the line was pressurized, and it was unusual to have a pressurized line in that area. *Id.* In addition, it was not possible to tell from the pipes themselves whether the water would be pressurized. *Id.* However, the as-built plans for the building, which the contractor had requested but not received, would have shown that the line was pressurized, and the contractor stated that it is generally a good idea to review those plans. *Id.* Since the contractors could have discovered that the lines were pressurized if they had insisted on reviewing those particular plans, the court held that summary judgment was inappropriate, even in light of the contractors' lack of actual knowledge and the various indications that that additional step was unnecessary. *Id.* at 858–59.

The facts here are similar. Neither the general contractor nor Thacker knew that the trusses were incapable of supporting the furnaces, and there was no visible indication that the roof overbuild created a structural deficiency. But they were still adding hundreds of pounds of weight to the trusses, and Mr. Bontrager testified that he had used engineers on many occasions in relation to trusses. And though Thacker might have been unable to detect the structural deficiency on its own, there is no suggestion that a structural engineer would not have been able

to do so had one been consulted. In fact, Affinity Mutual's expert opined that a proper structural evaluation would have revealed the "significant structural loading capacity deficiencies" in the roof structure. [DE 70-1 p. 6]. Thus, the Court finds that the questions of whether Thacker breached its duty, and whether the roof collapse was proximately caused by that breach, are properly left to the jury to decide.

Thacker also argues that it should not be held responsible because it merely followed Mr. Bontrager's instructions as to where to place the furnaces. If true, then Thacker would not be liable unless those instructions were "so obviously dangerous or defective that no reasonable contractor would follow them." *Peters*, 804 N.E.2d at 742. However, Mr. Bontrager testified that he and Mr. Thacker jointly discussed where to place the furnaces and jointly decided to place them on the trusses, so there is a dispute of fact on that question.

In its reply brief, Thacker also takes issue with Affinity Mutual's expert witness, who opined that the roof collapse was "directly related" to Thacker's installation of the furnaces in the trusses without providing additional structural support. Thacker appears to argue that the witness is not qualified and that his opinions are not reliable. However, though Thacker's brief states that a *Daubert* motion "is being filed" to strike those opinions, it has not filed such a motion, so the Court will not disregard the witness' opinions at this stage. The Court therefore denies the motion for summary judgment as to the negligence claim.

Finally, Thacker also moves for summary judgment on the breach of warranty claim. In the complaint, the heading for Count 2 refers to a breach of "express and implied warranties." The complaint did not allege any express warranty, though, nor does Affinity Mutual now assert any express warranty, so this claim is best construed as relying solely on an implied warranty. "In a contract for work, there is an implied duty to do the work skillfully, carefully, and in a

9

workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract." *Pearson*, 547 N.E.2d at 857. As just explained, the Court finds that there are genuine disputes as to whether Thacker was negligent, so summary judgment is unwarranted on this claim. However, this claim does not offer an independent basis for relief; whether the duty is implied from a contract or arises from the common law, the claim is that Thacker is liable for its negligence. Thus, though the Court denies summary judgment on this claim, there is really only a single outstanding claim in this action. *See Nat'l Fire & Cas. Co. v. Kessler Tank Co., Inc.*, No. 4:13-cv-82, 2017 WL 3034974, at *1 (N.D. Ind. July 18, 2017) ("For starters, we can ignore the breach of the implied duty of workmanlike performance claim because, under Indiana law, it is subsumed by the other claims."); *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003).

## IV. CONCLUSION

For those reasons, the Court DENIES Thacker's motion for summary judgment. [DE 65]. Thacker's motion to file a corrected exhibit [DE 72] is GRANTED.

SO ORDERED.

ENTERED: August 27, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court

10